## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | | |
|---|---|---|
| **NICHOLE BERTEAU** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.: 15-CV-7581** |
| **v.** | : | |
| | : | |
| **FIG & OLIVE, INC., d.b.a** | : | |
| **FIG & OLIVE, LLC, a** | : | |
| **California Corportion,** | : | |
| | : | |
| **Defendant.** | : | |

_____

## COMPLAINT

Plaintiff Nichole Berteau ("plaintiff"), by and through her attorneys of record, asserting claims against Defendant Fig & Olive, Inc., d.b.a. Fig & Olive, LLC, a California Corporation ("defendant"), and states and alleges as follows:

### I.      PARTIES

1.      The plaintiff, Nichole Berteau, is a resident of Los Angeles County, California, and is a citizen of the State of California.

2.      The defendant, Fig & Olive, Inc., d.b.a. Fig & Olive, LLC, is a corporation organized and existing under the laws of the Delaware, with its principal office in the State of New York. Defendant, together with its subsidiaries (collectively the "Company"), develops and operates certain restaurants. At all times relevant to the allegations contained in this complaint, the Company was registered to do business, and did conduct business, in the County of Los Angeles, including at 8490 Melrose Place West Hollywood, California 90069. The Company

manufactured and sold the food products that are the subject of this action at its restaurant location in California.

## II.    JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a)(1) and (e) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the State of California such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4.      Venue in the United States District Court for the Central District of California is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III.    GENERAL ALLEGATIONS

### The *Salmonella* Outbreak at Fig & Olive

5.      On or about September 9, 2015, The District of Columbia Department of Health (DOH) was notified of a potential foodborne disease outbreak at Defendant's Fig & Olive food establishment in Washington, D.C. On Thursday, September 10, the restaurant voluntarily closed for six days during DOH's investigation.  Ultimately, the outbreak at Defendant's restaurant caused more than 60 people to become ill, including residents of five states in addition to the District of Columbia. An additional 150 possible cases are being investigated.

6.      Defendant's Fig & Olive restaurant location in Los Angeles has experienced a Salmonellosis outbreak at approximately the same time as the D.C. location.  The Los Angeles

County Department of Public Health's investigation is ongoing, and it has stated that twenty persons meeting a clinical definition for *Salmonella* reported eating at this restaurant between Sept. 6 and Sept. 11, 2015. Of these, seven have been confirmed by laboratory tests detecting the *Salmonella*. In addition to patrons of the restaurant, three restaurant employees were identified with the same *Salmonella* type.

7.     Given that there are two simultaneous outbreaks at Defendant's Fig & Olive restaurant locations in Washington D.C. and Los Angeles, the Centers for Disease Control and Prevention has recently become involved in the investigation of these outbreaks, along with officials from the Food and Drug Administration. The investigation continues, as of the date of this filing.

### ***Salmonella***

8.     The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans. The taxonomy and nomenclature of *Salmonella* have changed over the years and are still evolving. Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

9.     *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by

infected food service workers who have practiced poor personal hygiene.  Contaminated foods usually look and smell normal.  Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated.  Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

**Medical Complications of *Salmonellosis***

10.     The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized at another site distant from the affected joints.  The predominant site of the infection is the gastrointestinal tract.  Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

11.     The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria.  In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination).  *Id*. This triad of symptoms is called Reiter's Syndrome. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary infections.  The most common gastrointestinal bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*.  A triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, although not all three symptoms occur in all affected individuals.

12.     *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain.  In one recent study, over one-third of IBS sufferers had had IBS for more than ten years, with their

symptoms remaining fairly constant over time. IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

**Plaintiff's Salmonella Illness**

13. Plaintiff dined at Defendant's Los Angeles Fig & Olive restaurant location on September 9, 2015. She ordered and consumed the Chilean Sea Bass for entrée, and shared several appetizers with her table, including truffle mushroom croquette, sea scallops, Burratta & heirloom tomato caprese.

14. On or about September 11, 2015, Plaintiff fell ill with severe gastrointestinal symptoms.

15. On September 15, 2015, Plaintiff went to the emergency department at Sherman Oaks Hospital in Sherman Oaks, CA. She was treated with intravenous fluids and potassium supplement, and then released.

16. Plaintiff's symptoms only became worse after discharge from the ER. Accordingly, she was seen at the same ER on September 19, 2015. Plaintiff was started on antibiotics and admitted to the hospital. She was hospitalized until September 26, 2015 with *Salmonella* symptoms. She will continue to recover at home.

17. Plaintiff was contacted by the Los Angeles County Department of Health during their ongoing investigation and questioned about the foods she consumed at Defendant's restaurant.

## IV.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## STRICT LIABILITY CLAIM
**(Violation of Federal Food Drug and Cosmetic Act, 21 U.S.C. § 342(a), and California's Sherman Food, Drug, and Cosmetic Laws, California Health and Safety Code § 109875, *et seq.*)**

18.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

19.    Defendant was in the business of manufacturing or selling food products or food ingredients, and was in the chain of manufacture and distribution of the meal that the plaintiff purchased and consumed. As a result of being the manufacturer of the subject products, Defendant participated in the enterprise responsible for placing the subject product in the stream of commerce and, thus, subject to strict liability under the laws of California.

20.    The meal that the plaintiff purchased and consumed was a ready-to-eat product, intended for consumption without further preparation, cooking, or other step that might eliminate the presence of Salmonella or other pathogens. Similarly, the ingredients used to manufacture the meal were manufactured for the purpose of being used as part of a ready-to-eat products.

21.    A ready-to-eat product contaminated with Salmonella is adulterated within the meaning of Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342(a), and implementing regulations, and California's Sherman Food, Drug, and Cosmetic Act, CA Health & Safety Code § 110545. *See* 21 C.F.R. §109.3(c) and (d). In addition, a ready-to-eat product contaminated with Salmonella is defective, unreasonably dangerous, and not fit for human consumption.  The subject product was adulterated, as well as being defective, unreasonably dangerous, and not fit for human consumption.

6

22.     The subject product was expected by the defendant to reach all consumers, and to be consumed by them, without any substantial change, and the subject product did in fact reach the Plaintiff without any substantial change in the product.

23.     Plaintiff consumed the subject product, having received the same without any substantial change occurring, and she consumed the product in the manner expected and intended, including when she consumed it.

24.     Plaintiff was infected with Salmonella as a result of consuming the defective and unreasonably dangerous subject product. Furthermore, Plaintiff has suffered severe and continuing injuries as alleged above, as a direct and proximate result of the consumption of the subject product. Accordingly, the defendant is strictly liable to Plaintiff for all damages proximately caused by the manufacture and sale of a defective and unreasonably dangerous food product or food product ingredient.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY CLAIM

25.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

26.     Defendant impliedly warranted that the subject food products were of merchantable quality, and thus were safe and fit for human consumption.  Plaintiff purchased and consumed the subject product, and reasonably relied upon the skill and judgment of defendant as to whether the products were of merchantable quality and fit for human consumption.

27.     Defendant breached these implied warranties in that subject products were contaminated with Salmonella.  As a direct, legal and proximate result of the breach of

implied warranties, Plaintiff suffered and may continue to suffer injury, harm, special damages and economic loss.

## THIRD CAUSE OF ACTION
### NEGLIGENCE & NEGLIGENCE PER SE CLAIMS

28.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

29.     Defendant was negligent in the manufacture, sale, or distribution of the subject products, thus causing the subject outbreak, and thus also causing Plaintiff's injury.

30.     More specifically, the defendant owed a duty to properly supervise, train, and monitor employees, or the employees of its agents or subcontractors, in the preparation of the product or product-ingredients it sold, doing so to ensure compliance with the defendant's own specifications and performance standards, as well as to ensure compliance with all applicable health regulations, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342(a), implementing regulations, 21 C.F.R. §109.3(c) and (d), FDA Good Manufacturing Practices regulations, 21 C.F.R. Part 110, Subparts (A)-(G), and California's Sherman Food, Drug, and Cosmetic Act, CA Health & Safety Code § 110545. The defendant violated one or more of the safety requirement that the law imposes and, as a result, breached duties owed to the plaintiff, and injuring the plaintiff as a direct and proximate result of such breaches.

31.     Defendant additionally owed a duty to comply with statutory and regulatory provisions that pertained or applied to either the import, manufacture, distribution, storage, or sale of its product or product-ingredients, including, but not limited to, the Federal Food, Drug, and Cosmetics Act, § 402(a), as codified at 21 U.S.C. § 342(a), which bans the

manufacture, sale and distribution of any "adulterated" food, and California's Sherman Food, Drug, and Cosmetic Act, CA Health & Safety Code § 110545, which imposes an identical ban on such adulteration.

32.     Under both federal and applicable state law, food is adulterated if it contains a "poisonous or deleterious substance, which may render it injurious to health." Salmonella is such a substance. Thus, by either manufacture, distribution, storage, or sale of the subject product or the subject product's ingredients, the defendant breached its statutory and regulatory duties, and the plaintiff was injured as a direct and proximate result of such breaches.

33.     Defendant's negligent acts and omissions included, but were not limited to:

(a)     Failure to prevent the contamination of the product or product-ingredients by Salmonella, including the failure to implement or non-negligently perform inspection and monitoring of the product or product-ingredients such that its adulterated condition would be discovered prior to its sale or distribution to the public for human consumption.

(b)     Failure to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, on how to ensure the manufacture, distribution or sale of food product free of adulteration by potentially lethal pathogens.

34.     The federal and state food safety regulations applicable here, and as set forth above, establish a positive and definite standard of care in the import, manufacture, distribution or sale of food, and the violation of these regulations constitutes negligence *per se*.

35.     Plaintiff was in the class of persons intended to be protected by these statutes

and regulations, and were injured as the direct and proximate result of the defendants' violation of applicable federal, state and local food safety regulations.

36.    Defendant breached the aforementioned duties as alleged above, which breach constituted the proximate cause of injury to the plaintiff.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

38.    Defendant  knew or should have known their failure to exercise due care in the performance of its duties would cause Plaintiff severe emotional distress.

39.    As a proximate result of Defendants' acts as alleged above, Plaintiff suffered severe emotional distress and mental suffering all to their detriment.

## DAMAGES

40.    Plaintiff has suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the defendants, which damages shall be fully proven at the time of trial, including, but not limited to, damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; wage and economic loss, past and future; emotional distress, and future emotional distress; medical and pharmaceutical expenses, past and future; and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against defendant as follows:

A.      Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct in an amount to be determined by the jury;

B.      Ordering statutory prejudgment interest;

C.      Awarding plaintiff reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

D.      Granting all such additional and/or further relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.


DATED:        September 28, 2015


MARLER CLARK, LLP, PS


By: _/s/ William D. Marler_____
        William D. Marler, Esq.
        (Admission *pro hac vice* pending)
        bmarler@marlerclark.com
        1301 Second Avenue, Suite 2800
        Seattle, WA 98101
        Telephone: 206-346-1888
        *Counsel for Plaintiff*